IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DELROY JOSIAH-EL-BEY<br>*also known as Delroy Josiah*,<br>　　　Plaintiff,<br><br>v.<br><br>DELROY JOSIAH, *et al.*,<br>　　　Defendants. | Civil Action No. 7:22-cv-00597<br><br>By: Elizabeth K. Dillon<br>　　United States District Judge |

**MEMORANDUM OPINION**

　　Delroy Josiah-El-Bey, an inmate in the custody of the Virginia Department of Corrections and proceeding *pro se*, commenced this civil action under 42 U.S.C. § 1983. Although Josiah-El-Bey has paid the full filing fee, his complaint is nonetheless subject to screening under 28 U.S.C. § 1915A(a). Under that statute, the court must conduct an initial review of a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). The court must "dismiss the complaint, or any portion of the complaint," if it is frivolous, fails to state a claim on which relief may be granted, or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)–(2).

　　Pleadings of self-represented litigants are given a liberal construction and held to a less stringent standard than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). Liberal construction does not mean, however, that the court can ignore a clear failure in pleadings to allege facts setting forth a claim cognizable in a federal district court. *See Weller v. Dep't of Social Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

　　Applying these standards to Josiah-El-Bey's complaint, the court concludes that his complaint is subject to dismissal for failure to state a claim. The court will therefore dismiss Josiah-El-Bey's complaint. Because he may be able to amend two of his claims to state a viable

claim, however, the court will give him an opportunity to file an amended complaint raising only those two claims.

I. JOSIAH-EL-BEY'S ALLEGATIONS[1]

Josiah-El-Bey's complaint names himself as a defendant (using the name under which he was convicted, Delroy Josiah), and also names three individuals at Wallens Ridge State Prison (Wallens Ridge)—Warden Davis, Investigator Rivero, and Major Blevins—and Carl Manis, who he identifies as the Regional Director of the Virginia Department of Corrections. He also names John and Jane Doe employees at Wallens Ridge.

Most of his complaint and nearly all of his claims appear to be premised on a combination of two overarching theories. The first is one that is based on his citizenship as a "Moor/Moorish American," which he says means he is not actually "Josiah, Delroy #1028534, or any variations or derivatives thereof or therefrom" and is instead a citizen of the "Moorish American nation . . . the modern name of the descendants of the ancient Moabites (the inhabitants of the North-west and South-west Africa), born in America." (Compl. 1–2.) The second is the theory underlying the so-called "sovereign citizen" movement.[2] He contends that, because he is a "natural born, free, living, breathing, flesh, and blood human," he is a sovereign and "not a statutory or United States citizen under the 14th amendment." (*Id.* at 1.)

---

[1] The complaint also purports to bring claims on behalf of three other prisoners, who Josiah-El-Bey claims also are being held under unconstitutional judgments. (Compl. 3.) But a litigant unassisted by counsel may not represent other plaintiffs. *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975). If any of those individuals want to file their own, separate complaints, they may do so.

[2] Followers of this movement believe that they have special rights and often object to jurisdiction on frivolous and unfounded grounds. *See United States v. Schneider*, 910 F.2d 1569, 1570 (7th Cir. 1990) (noting that sovereign citizen jurisdictional arguments have "no conceivable validity in American law"); *United States v. Jagim*, 978 F.2d 1032, 1036 (8th Cir. 1992) (sovereign citizen arguments "are completely without merit, patently frivolous, and will be rejected without expending any more of this Court's resources on their discussion"). In some instances, the two concepts inexplicably began to merge, as summarized by one court. *See Abdullah v. New Jersey,* No. 12–4202, 2012 WL 2916738, at *2–3 (D.N.J. July 16, 2012).

Josiah-El-Bey explains that he is being held against his will at Wallens Ridge, and pursuant to an "unconstitutional judgment" from the U.S. District Court for the U.S. Virgin Islands. (*Id.* at 2.) He states that he has filed a motion to void that judgment before that court, but it is still pending. His complaint also states that he is not a "Black," "Negro," "Colored" nor "African-American," (all labels of "Christianized property"). And he devotes many pages of his complaint to numerous contentions concerning this fact, slavery generally, the relationship between slavery and its abolition under the Thirteenth Amendment, and statements about "denationalization" and the 1787 "Treaty of Peace and Friendship between the U.S. and Morocco." (Compl. 7–12.) He also attaches to his complaint numerous documents including proclamations from mayors of several U.S. cities designating a specific week as "Moorish American Week" in their cities. (*See* Dkt. No. 1-1.)

It is not necessary to go through these contentions in any detail. Basically, based on a combination of his Moorish American and "sovereign citizen" assertions, Josiah-El-Bey is claiming that his incarceration at Wallens Ridge, via an interstate compact with the Department of Corrections for the U.S. Virgin Islands, has subjected him to the "status of slave," even though he is not a slave. (Compl. 9, 10.) As a result, he claims that he is being falsely imprisoned. (*Id.* at 9.)

His complaint contains a section titled "Legal Claims," but that section mostly contains the same sorts of statements and also claims that he has a constitutional right to use the suffixes Bey or El (or both) at the end of his names. Presumably, he contends that this right is being violated, although he does not allege that anyone ever told him he could not use that name. (*Id.* at 12.)

In addition to this claim concerning his name—and despite not being listed in the "Legal Claims" section—other facts in the complaint lead the court to believe that Josiah-El-Bey is

3

asserting a retaliation claim. Specifically, he says that on April 25, 2022, he submitted a complaint to the Grievance Department at Wallens Ridge "asserting [his] true identity and proper status along with a demand for relief and compensation." (*Id.* at 5.) Three days later, he was taken off of his work assignment as a kitchen worker. After his initial complaint was determined to be unfounded by defendant Rivero, he appealed. The next day, he was removed from the "Privilege/Kitchen Pod, along with other Moors/Moorish Americans that voiced a similar complaint" and they "were all isolated from each other." (*Id.*) He grieved the termination of kitchen employment as an act of retaliation. During the grievance process, Major Blevins confirmed that he was removed from the kitchen and pod based on his initial complaint, in which he apparently referred to himself as being treated as a slave.

Josiah-El-Bey requests compensatory and punitive damages and also declarative and injunctive relief. In particular, he requests a permanent injunction ordering defendants: (1) "not to apply the status of slave to this Moorish-Plaintiff"; (2) "to acknowledge and not to restrict the usage of the religious and tribal suffixes of Bey and El's (or both) annexed to Moors/Moorish Americans names"; and (3) "to exclude this Moorish-Plaintiff from their interstate corrections contract agreement." (Compl. 13.)

## II.  DISCUSSION

**A.  Claims Based on Status as Moorish American or Sovereign Citizen**

As an initial matter, the court notes that Josiah-El-Bey's underlying premise regarding his status as a Moorish American, as a non-United States citizen, or as a sovereign citizen does not mean that his judgment of conviction was invalid or that he is being unlawfully imprisoned. Courts have repeatedly rejected such claims, both in the context of challenging the jurisdiction of criminal courts and in civil cases challenging the propriety of the plaintiff's incarceration. *E.g. United States v. White*, 480 F. App'x 193, 194 (4th Cir. 2012) (rejecting a claim that a federal

4

court lacked jurisdiction over a Moorish American because "[n]either the citizenship nor the heritage of a defendant constitutes a key ingredient to a district court's jurisdiction in criminal prosecutions"); *Kerr v. Hedrick*, 89 F. App'x 962, 964 (6th Cir. 2004) (rejecting as "without merit" the petitioner's claim that he was exempt from punishment for his federal crimes because his rights derived exclusively from the Moorish Science Temple of America); *Bond v. N.C. Dep't of Corr.*, No. 3:14-cv-379, 2014 WL 5509057, at *1 (W.D.N.C. Oct. 31, 2014) (stating that "courts have repeatedly rejected arguments" that a plaintiff is not subject to federal or state law because of their "Moorish American" citizenship); *Jones-El v. South Carolina*, No. 5:13-cv-01851, 2014 WL 958302, at *8 (rejecting claim based on status as Moorish American and relying on the Treaty of Peace and Friendship as "completely frivolous, whether raised under § 2254, § 2241, or by way of a civil complaint"); *Hampton v. City of Durham*, No. 1:10cv706, 2010 WL 3785538, at *2–3 (M.D.N.C. Sept. 22, 2010) (collecting cases and holding that "[a]ny claims or arguments raised by Plaintiff which are based on his membership in the Moorish American Nation are frivolous").

For the same reasons expressed by those courts, Josiah-El-Bey's claims based on these theories and principles will be dismissed for failure to state a claim, and the court will not address them further. *Cf. United States v. Jagim*, 978 F.2d 1032, 1036 (8th Cir. 1992) (refusing to expend "any more of the Court's resources" on discussing sovereign-citizen arguments).

**B.  Claim Concerning His Name**

Josiah-El-Bey also appears to be claiming that he is not being permitted to use El or Bey as part of their names.  It is unclear whether his complaint is alleging that use of his new name is based on a religious practice or belief, as opposed to a secular one, and it may matter.  For example, in *Barrett v. Virginia*, 689 F.2d 498, 503 (4th Cir. 1982), the Fourth Circuit held that "the mere fact that correctional authorities maintain a prisoner's records in the name he used

when convicted implicates no constitutional right." In *Ali v. Dixon*, 912 F.2d 86 (4th Cir. 1990), the court recognized the validity of *Barrett*, but explained that prison officials "may not properly condition the receipt of services or benefits" upon a prisoner's waiving his "right to legal recognition of an adopted religious name." In *Ali*, the court explained that the prison could be required to allow a prisoner to receive services under his new name as a means of accommodating the prisoner's free exercise right. 912 F.2d at 90. It also concluded, though, that there was no First Amendment violation in the prison staff addressing him verbally only by his committed name and not his new name. *Id.* at 91.

Here, Josiah-El-Bey does not specifically allege that the desired name change is tied to his religious belief. Moreover, he does not identify which of the named defendants, if any, he asked to use El or Bey or who rejected his requests. Importantly, he also has failed to explain or allege in what context he is asking to use those names (*e.g.*, in wanting others to verbally address him that way, in identifying him in his official prison record, etc.) And, as the cases cited in the preceding paragraph make clear, the context will matter. Accordingly, his complaint as currently pled does not state a viable claim, but it is possible that he may be able to do so by providing additional factual allegations. Accordingly, the court will dismiss any claim based on his requesting that VDOC use his El-Bey name, but will grant him leave to amend, should he so choose.

**C. Retaliation Claim**

Josiah-El-Bey's retaliation claim alleges that after he filed a grievance raising his Moorish American theory and stating that he was effectively a slave, his kitchen job was terminated. Upon appealing the denial of that grievance, he was moved from the kitchen/privilege pod.

To state a retaliation claim, Josiah-El-Bey must set forth facts sufficient to plausibly allege that: "(1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct." *Martin v. Duffy*, 977 F.3d 294, 299 (4th Cir. 2020) (citing *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017)) (alterations omitted).

As to the first element, filing a grievance is protected First Amendment activity. *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017) (stating that prisoners have a "First Amendment right to be free from retaliation for filing a grievance"). As to the second, the loss of a prison job is an adverse action that can satisfy this element. *Edwards v. DeBord*, No. 7:18-CV-00423, 2021 WL 5827324, at *4 (W.D. Va. Dec. 8, 2021), *appeal dismissed*, No. 22-6046, 2022 WL 2657347 (4th Cir. Apr. 11, 2022) (concluding that termination of a prisoner's job was a sufficient adverse action to support a First Amendment retaliation claim); *Patel v. Moron*, 897 F. Supp. 2d 389, 400 (E.D.N.C. 2012) (same). But lacking here are any allegations that any of the named defendants were responsible for that adverse action. Josiah-El-Bey explains that when he grieved the issue, certain of the defendants found his grievances unfounded, but the denial of a grievance does not generally give rise to constitutional liability. *Moone v. Herrick*, No. 7:21CV00472, 2022 WL 4594027, at *9 (W.D. Va. Sept. 29, 2022). Instead, he must show that a named defendant was the one who took the adverse action. Thus, he has not plausibly alleged facts to satisfy the entirety of the second element, and his claim thus fails to state a claim on which relief can be granted, as it is currently pled. As with his claim based on his name, though, he may be able to state a valid claim with additional factual matter. Thus, the court will give him an opportunity to file an amended complaint.

III.  OTHER MOTIONS

At the same time he filed his complaint and paid the filing fee, Josiah-El-Bey also filed two other motions. In the first, reciting some of his same arguments about being a "Moorish American sovereign," he moved to proceed *in forma pauperis*. (Dkt. No. 2.) Because he already has paid the filing fee, that motion will be denied as moot.

The second motion he titled as a "motion to exclude from the PLRA." (Dkt. No. 3.) In it, he again repeats his arguments about being a Moorish American. He then argues that he is a "Moorish Hostage," rather than a prisoner. He thus asks the court to exclude him from the provisions of the Prison Litigation Reform Act. He argues (without citing to any authority ) that the court has authority to grant the motion because every circuit court addressing the issue has held that the PLRA does not apply to immigration detainees, because they are not prisoners within the meaning of the act. Although that may well be true, Josiah-El-Bey is not an immigration detainee. He *is* a prisoner, despite his arguments to the contrary, and the PLRA is applicable to this case. This motion will be denied.

IV.  CONCLUSION

For the foregoing reasons, the court will summarily dismiss Josiah-El-Bey's complaint, without prejudice, pursuant to 28 U.S.C. § 1915A(b)(1), because his allegations fail to state a claim for which relief may be granted. The court will give Josiah-El-Bey the opportunity to file an amended complaint within thirty days, but the amended complaint may contain only allegations concerning the use of his preferred name and regarding his retaliation claim. All claims that are directly based on his status as a "Moor" or "Moorish American" or so-called "sovereign citizen" should not be included. Additional instructions regarding any amended complaint will be set forth in the court's order. Lastly, his motion to proceed *in forma*

*pauperis* (Dkt. No. 2) will be denied as moot, and his motion to exclude this case from the PLRA (Dkt. No. 3) will be denied.

An appropriate order will be entered.

Entered: November 21, 2022.

/s/ Elizabeth K. Dillon

Elizabeth K. Dillon
United States District Judge

9