CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
September 16, 2024
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DELROY JOSIAH-EL-BEY,<br>     Plaintiff, | Civil Action No. 7:22-cv-00597 |
| v. | |
| MELVIN DAVIS, *et al.*,<br>     Defendants. | By: Elizabeth K. Dillon<br>Chief United States District Judge |

**MEMORANDUM OPINION**

Plaintiff Delroy Josiah-El-Bey, a Virginia inmate proceeding *pro se*, brought this action pursuant to 42 U.S.C. § 1983 alleging that defendants violated the First Amendment by listing his race as "black" in VDOC's administrative records, and by removing him from his prison job in retaliation for filing an administrative grievance. (Second Am. Compl., Dkt. Nos. 8, 8-1.) Before the court are cross-motions for summary judgment and plaintiff's separate motion for entry of judgment. (Dkt. Nos. 23, 26. 31.) For the reasons stated below, plaintiff's motions will be denied, defendants' motion will be granted, and this matter will be dismissed in its entirety.

I.  BACKGROUND

**A.  Plaintiff's Claims and Parties**

Josiah-El-Bey is housed at Wallens Ridge State Prison (WRSP), as he was when the events giving rise to this lawsuit occurred. In his second amended complaint, he alleges that defendants violated the Free Exercise Clause and Establishment Clause of the First Amendment by listing his race as "black" in VDOC's administrative records. He also alleges that defendants retaliated against him in violation of the First Amendment by removing him from his prison job. (*See* Dkt. No. 8-1.)

The defendants in this matter are Melvin Davis, former warden of WRSP; J. Blevins, the Major at WRSP; Harold Clarke, former director of VDOC; Carl Manis, former Regional Administrator for VDOC's Western Region; and Jeffrey Artrip, the current Warden at WRSP.

**B. Fleming Affidavit and Exhibits**

In support of their motion for summary judgment, defendants have submitted the affidavit of K. Matthew Fleming, Lieutenant Institutional Investigator at WRSP. (Fleming Aff., Dkt. No. 27-1.)

Fleming explains that, according to VDOC records, plaintiff enrolled in the Moorish Science Temple of America (MSTA) program on July 1, 2022. (Fleming Aff. ¶ 5.) MSTA is a religious organization that inmates can designate as their religion and enroll in the programs at the VDOC facilities in which they are housed. The Holy Day for MSTA is on Friday, and they participate in Ramadan. MSTA members add suffixes to their name once they become a member, such as El, Bey, or Ali, unofficially to signify of which of the three tribes they claim to be a part. Their belief is that they do not have to legally add the suffix to their names because the name is their birthright. Plaintiff has not legally added El-Bey to his name and is still listed in the VDOC system as Delroy Josiah. MSTA members do not identify as "black" because they believe that identifying as black makes the individual a slave to the country they reside in, as "black" is a term linked to slavery. (*See* Fleming Aff. ¶ 4, Encl. A (MSTA Branch Template booklet).) In 2023, plaintiff participated in the observance of Noble Drew Ali's Birthday (January 8), Ramadan/Month of Fasting, Eid-ul-Fitr, and Eid-ul-Adha with the Moorish Science Temple religious group. (Fleming Aff. ¶ 5.)

VDOC classifies inmates according to multiple categories, including race, for administrative purposes. Plaintiff is classified as "Black" in VDOC's records. VDOC does not

require plaintiff or other inmates to self-identify using any particular racial categories or terms. (Fleming Aff. ¶ 12.)

On April 25, 2022, plaintiff submitted a Written Complaint (WRSP-22-INF-01126) in which he stated that his name is Delroy Josiah-El-Bey, and he does not identify with being labeled as black, an inmate, Virgin Islander, or a United States citizen. He stated in the complaint that he is a Moor and that this status immunizes him from slave treatment. His complaint was reviewed by the investigator's office. Intelligence Officer (I/O) Rivero responded on April 27, 2022. I/O Rivero informed plaintiff that his name in the system is Delroy Josiah and told him if there is an error with his name or if he would like to change it, he should reach out to his building counselor to have the process explained. I/O Rivero also explained that while plaintiff is in VDOC custody, he will be recognized as an inmate and that all incarcerated individuals are treated humanely and are afforded protection under the U.S. Constitution. I/O Rivero stated that VDOC does not have policies that allow inmates to be treated as slaves. The complaint was noted to be unfounded and without merit. (Fleming Aff. ¶ 6, Encl. B.)

Three other inmate workers, where plaintiff also worked, along with two other inmates, submitted complaints similar to the one Josiah-El-Bey had submitted. These inmates all lived in the same housing unit. On April 29, 2022, Lt. Fleming, in consultation with defendants Davis and Blevins, made the decision to temporarily remove plaintiff and the three other inmates from their kitchen positions from April 30 through May 1, 2022, while an investigation was conducted. (Fleming Aff. ¶ 7, Encl. C.)

Plaintiff submitted a Written Complaint (WRSP-22-INF-01317) on May 9, 2022, stating that he was being retaliated against because of his April 25 complaint. He claimed that shortly after submitting this complaint, he was terminated as a kitchen worker and moved out of the

3

kitchen workers' pod. Blevins responded on May 24, 2022, telling plaintiff that since he had asked for relief and stated that he was being treated as a slave in his earlier complaint, he was removed from the kitchen. On May 25, 2022, plaintiff submitted a Regular Grievance (WRSP-22-REG-00236) stating that he was dissatisfied with the response he received to his Written Complaint and that he was seeking better accommodations and compensation. On June 14, 2022, Davis issued a Level I response, informing plaintiff that he was removed from his kitchen position and the pod for security reasons and his grievance was determined to be unfounded. On July 12, 2022, he appealed the Level I response to the Regional Ombudsman. Manis upheld the decision of the Level I response that the complaint was unfounded. (Fleming Aff. ¶ 9, Encl. E.)

On May 10, 2022, plaintiff submitted a Regular Grievance (WRSP-22-REG-00178) stating that he felt the response from I/O Rivero for his Written Complaint (WRSP-22-INF-01126) was insulting and that his claims were not addressed. On May 15, 2022, Davis issued a Level I Response, stating that I/O Rivero's response was appropriate, and the Regular Grievance submitted was unfounded. Plaintiff appealed the response to the Regional Ombudsman. Manis upheld the decision of the Level I response. (Fleming Aff. ¶ 8, Encl. D.)

When the intel office conducted the investigation into the multiple similar complaints, it was determined that Josiah-El-Bey had convinced the other inmate kitchen workers to submit complaints with sovereign citizen language. (Fleming Aff. ¶ 10.) Sovereign citizens are recognized as a security threat group by VDOC because they do not believe they are subject to government statutes or proceedings and do not recognize the authority of prison officials. Based on the information collected, it appeared that plaintiff was organizing others to engage in sovereign citizen activities. Given the nature of the language in the complaints, stating that they are not inmates and are not governed by the policies of VDOC, and because there were multiple

inmates making the same claims who were from the same housing unit and who worked in the kitchen, it raised concerns that these inmates were participating in sovereign citizen related activities and could potentially organize a work stoppage. Therefore, for security reasons, plaintiff and the other inmates were terminated from their kitchen positions. Plaintiff was officially terminated from the position on June 5, 2022. (Fleming Aff. ¶ 11.)

**C. Plaintiff's Declarations and Exhibits**

Josiah-El-Bey has filed declarations, executed under penalty of perjury, in support of his motion for summary judgment and in response to defendants' motion for summary judgment. (Pl.'s First and Second Decl., Dkt. Nos. 23-1, 29-1.) Plaintiff maintains that he did not coordinate the filing of any complaints or grievances. (Pl.'s Second Decl. ¶ 5.) He also asserts that he did not use any sovereign citizen language; instead, "the language that I used was based on the teachings of the prophet . . . ." (*Id.* ¶ 7.) Regarding his classification claim, he explains that the word "Black" was first used by the English Christian colonists that settled in North America and was attributed to enslaved Africans, and that the use of the label "Black" inhibits the free expression of his religion and violates the tenets of his MSTA belief system. (Pl.'s First Decl. ¶¶ 1–10.)

I. ANALYSIS

**A. Summary Judgment Standard**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported

motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of fact precludes summary judgment. *Anderson*, 477 U.S. at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence is "so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

When faced with cross-motions for summary judgment, the court, applying the above standard, must consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003).

While the submissions of *pro se* litigants are liberally construed, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the court must also abide the "affirmative obligation of the trial judge to

prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003).

**B. Defendants' Motion for Summary Judgment**

    **1. First Amendment claims**

Under the Free Exercise Clause of the First Amendment, inmates retain a right to reasonable opportunities for free exercise of religious beliefs without concern for the possibility of punishment. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972) (per curiam). To state a claim for violation of rights secured by the Free Exercise Clause, as a threshold matter, an inmate must demonstrate that he holds a sincere religious belief, and that a prison practice or policy places a substantial burden on his ability to practice his religion. *Carter v. Fleming*, 879 F.3d 132, 139 (4th Cir. 2018) (citing *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981)).

Josiah-El-Bey argues that identifying as "Black" conflicts with his religious beliefs. VDOC did not compel plaintiff to self-identify as "Black". (Fleming Aff. ¶ 12.) Thus, plaintiff has not shown how the classification places any burden on the exercise of his religion.

Josiah-El-Bey has also alleged a violation of the Establishment Clause. The "government may not, consistent with a historically sensitive understanding of the Establishment Clause, make a religious observance compulsory. . . . Government may not coerce anyone to attend church, . . . nor may it force citizens to engage in a formal religious exercise . . . ." *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2429 (2022). The VDOC's label is consistent with ordinary usage and does not carry any religious connotation. (Fleming Aff. ¶ 12.) Use of the label does not coerce plaintiff to engage in the exercise of any religion.

In sum, as numerous courts have already concluded, the use of the label "Black" to identify plaintiff for administrative purposes does not violate either clause of the First

Amendment or any other constitutional provision. "[T]he fact that VDOC's records, or the records of Lane-Bey's conviction, use the name he was given at birth or list him as 'Black' does not rise to the level of a constitutional violation." *Lane-Bey v. Lane*, No. 7:22-cv-656, 2023 WL 3230483, at *3 (W.D. Va. May 3, 2023); *see also Whitfield v. Westville Corr. Facility*, No. 3:19-CV-JD-MGG, 2019 WL 4597357, at *2 (N.D. Ind. Sept. 19, 2019) (dismissing claims based on allegations that labeling plaintiff as a member of a "black Muslim group" violated his religious rights); *Anderson-El v. Chief of Aux. Serv.*, No. 5:11-CT-3170-D, 2012 WL 5305782, at *1 (E.D.N.C. May 22, 2012) (prison officials' refusal to change nationality or race in official prison records is not a constitutional violation).

For these reasons, defendants are entitled to summary judgment on plaintiff's First Amendment classification claim.

### 2. Retaliation

In his retaliation claim, Josiah-El-Bey alleges that Blevins and Davis retaliated against him, in violation of his First Amendment rights, by removing him from his job as a kitchen worker, and that Manis acted with "deliberate indifference to the act of retaliation." (Second Am. Compl. ¶¶ 9–10.) Plaintiff claims that he was removed from his job in retaliation for filing prison grievances and complaints. (*Id.* ¶ 51.)

With respect to Manis, plaintiff cannot establish that Manis was personally involved in the alleged constitutional violation because Manis did not participate in the decision to terminate plaintiff from his kitchen job. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Josiah-El-Bey appears to premise his claim against Manis based on Manis' rejection of his grievance appeal; however, "[r]uling against a prisoner on an administrative complaint does not cause or contribute to a constitutional violation." *Brown v. Clarke*, No. 7:15cv414, 2016 WL 4544548, at *2 (W.D. Va. Aug. 31, 2016); *see also Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (holding that a prison official's response to a grievance does not implicate that official in the underlying conduct). Thus, Manis is entitled to summary judgment on this claim.

With respect to plaintiff's claim against Blevins and Davis, plaintiff must show that (1) he engaged in constitutionally protected activity, (2) the defendant took action that adversely affected the exercise of plaintiff's constitutional rights, and (3) the adverse act was causally related to the protected activity. *Martin v. Duffy*, 977 F.3d 294, 299 (4th Cir. 2020). "In the prison context, we treat such claims with skepticism because every act of discipline by prison officials is by definition retaliatory in the sense that it responds directly to prisoner misconduct." *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996). As a result, a plaintiff "must present more than naked allegations of reprisal." *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994).

Here, the record reflects that Josiah-El-Bey was removed from his kitchen job because he was found to have engaged in organized sovereign citizen activity. Thus, he cannot connect his removal to any activity that is constitutionally protected. *See Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 131–32 (1977) (holding that prison officials can prohibit solicitation of inmates to join a prisoners' union consistent with the First Amendment); *Edwards v. King*, 7:21cv47, 2022 WL 875039, at *5 (W.D. Va. Mar. 22, 2022) (finding that "VDOC has a compelling interest in preventing the risks to security and order posed by inmates having unrestricted access to sovereign citizen literature").

Josiah-El-Bey denies engaging in any sovereign citizen or organized activity, and he alleges that he was removed from the job for filing an administrative complaint. While plaintiff's termination resulted from concerns raised by his grievance activity, it does not follow that plaintiff was terminated as punishment for exercising his First Amendment right to redress of grievances. For causation purposes, the proper inquiry is not "whether the defendant would have reached the same decision absent the plaintiff's protected conduct, but whether the defendant would have reached the same decision absent a retaliatory motive." *Martin*, 977 F.3d at 303–04. Here, the record shows that the complaint submitted by plaintiff is substantially the same as those submitted by other inmates who worked in the kitchen and lived in his housing unit. (Fleming Aff. ¶¶ 6–7, Encl. B, C.) This raised concerns that plaintiff and other inmates could engage in sovereign citizen activities or a work stoppage. (Fleming Aff. ¶ 11.) Thus, despite plaintiff's denials, the evidence shows that defendants acted out of concerns for institutional security, not retaliation for plaintiff's protected expression or religious beliefs.

For these reasons, defendants are entitled to summary judgment on plaintiff's retaliation claim.

## C. Plaintiff's Motion for Summary Judgment

In support of his motion for summary judgment, plaintiff argues that the term "Black" was first used by the English Christian colonists that settled in North America and was attributed to enslaved Africans, and that the use of the label "Black" inhibits the free expression of his religion and violates the tenets of his MSTA belief system. (Pl.'s First Decl. ¶¶ 1–10.) However, because defendants are entitled to summary judgment, it follows that plaintiff is not entitled to summary judgment when looking at the evidence in a light most favorable to defendants. At minimum, the facts brought forth by defendants in support of their motion for

summary judgment—and in opposition to plaintiff's motion for summary judgment—preclude the entry of judgment in favor of plaintiff.

**D. Plaintiff's Motion for Entry of Judgment**

In plaintiff's motion for entry of judgment, plaintiff asserts that he is entitled to the entry of judgment in his favor because he has "met his burden of proof, by the preponderance of the evidence and is entitled to relief by law." (Dkt. No. 31 at 2.) He cites to Federal Rule of Civil Procedure 54(b), but he does not argue why he would be entitled to judgment under this rule and does not cite to any proof in favor of his claims. In any event, as defendants are entitled to summary judgment, Josiah-El-Bey is not entitled to judgment in his favor.

### III. CONCLUSION

The court will issue an appropriate order granting defendants' motion for summary judgment and denying both of plaintiff's motions.

Entered: September 16, 2024.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
Chief United States District Judge